

# THE ATTORNEY GENERAL.
## OF TEXAS
### AUSTIN, TEXAS

PRICE DANIEL.
ATTORNEY GENERAL.

April 29, 1949

*overruled by WW-783 to the extent of the conflict*

Hon. James E. Taylor, Chairman
Senate Finance Committee
51st Legislature
Austin, Texas

Opinion No. V-818.

Re: Authority of Board of
Regents of The Univer-
sity of Texas to use
the "Available Univer-
sity Fund" for perma-
nent improvements for
the School of Dentist-
ry or the M. D. Ander-
son Hospital, both lo-
cated at Houston.

Dear Sir:

We refer to your request for an opinion on the following question:

"Does the Board of Regents of The University of Texas have the authority to use any portion of the 'available University funds' for the purpose of erecting buildings or other improvements or for the support and maintenance of either the School of Dentistry of The University of Texas or the M. D. Anderson Hospital for Cancer Research of The University of Texas, both of which institutions are located in Houston, Harris County, Texas?"

As early as 1917, when two statutory schools (West Texas A. & M. College and North Texas Agricultural College) were proposed, the Attorney General was asked for an opinion on the constitutionality of their establishment at places other than Austin or Bryan. The problem involved the question of whether the Legislature had the power to establish institutions of higher learning in any manner other than as provided in Article VII of the Texas Constitution. In the opinion written by

Luther Nickels, who later served as a Commissioner to the Texas Supreme Court, it was held that the Legislature was authorized under Section 48 of Article III to establish other colleges and universities and support them out of the general revenue. It also pointed out that such statutory universities would not be constitutional branches of The University of Texas within the meaning of Article VII, Texas Constitution. See excerpts of opinion copies in V-31 attached hereto.

Again in 1928, the Attorney General was asked to determine whether the School of Mines and Metallurgy was a branch of The University of Texas within the intendment of Article VII, Texas Constitution, and if so whether money could be appropriated out of the general fund to be used for the erection of buildings at El Paso. The statutes provided (and still provide) that the School of Mines "shall be under the management and control of the Board of Regents of the State University, and the faculty of said school shall be appointed by the Board of Regents of The University of Texas . . . and the same is hereby made and constituted a branch of the State University for instruction in the arts of mining . . ." Art. 2633, V.C.S.

In the opinion written by D. A. Simmons, then First Assistant Attorney General, and recently President of the American Bar Association, it was held that:

> "In our opinion, the School of Mines and Metallurgy is not a branch of The University of Texas, as the term 'branch' is used in the Constitution of Texas. The history of the University as briefly outlined herein, shows very clearly that the power is not given to the Legislature to create branches of the University wherever it might see fit . . ."

It was further held that the Legislature had full authority to establish a School of Mines and Metallurgy at El Paso under authority of Article III, Section 48, including erection of buildings with general revenue funds. Excerpts from that opinion (Opinion No. 2731 to Hon. Adrian Pool dated April 18, 1928) are quoted in V-31.

In Mumme v. Marrs, 120 Tex. 383, 40 S.W. 2d 31 (1931), Chief Justice Cureton of the Supreme Court wrote

that Section 5 of Article VII, Texas Constitution, de-
fining the Available School Fund, and declaring that "it
shall be distributed to the several counties according
to their scholastic population," was not a limitation
which prevented the distribution of an appropriation
from the general revenue for school districts in accord-
ance with the Rural Aid Act. In arriving at such con-
clusion, Chief Justice Cureton said:

> "The history of educational legislation
> in this State shows that the provisions of Ar-
> ticle VII, the educational article of the Con-
> stitution, have never been regarded as limita-
> tions by implication on the general power of
> the Legislature to pass laws upon the subject
> of education. This article discloses a well-
> considered purpose on the part of those who
> framed it to bring about the establishment and
> maintenance of a comprehensive system of pub-
> lic education, consisting of a general public
> free school system and a system of higher edu-
> cation. Three institutions of higher learning
> were expressly provided for.... The Legisla-
> ture, however, has gone far beyond the crea-
> tion of the three institutions of higher learn-
> ing specifically required by the organic law,
> and has created ten additional institutions of
> a similar character without direct constitu-
> tional grant, beginning with the Sam Houston
> Normal in Huntsville in 1879 . . . . In found-
> ing these ten institutions, beginning more than
> fifty years ago, the Legislature has necessarily
> held that the specific grants of power con-
> tained in the Constitution to erect and main-
> tain The University of Texas . . . were not
> limitations on its power to create other
> schools of similar purpose, and to maintain
> them by appropriations from the General Reve-
> nue. This interpretation has never been ques-
> tioned, and is consistent with authorities from
> other jurisdictions. . . ." (Underscoring ours.)

The three institutions of higher learning ex-
pressly provided for and specifically required by con-
stitutional law, as referred to in Chief Justice Cure-
ton's opinion, are the constitutional branches of The
University of Texas: the Main University at Austin, the
Medical Department at Galveston, and the Agricultural
and Mechanical College at Bryan.

It will be noted that the School of Mines and Metallurgy, a college which is designated a "branch" in the statutes and which is under the management of The University of Texas' Board of Regents, is listed among other statutory colleges designated in Section 17 of Article VII of the Texas Constitution. However, neither the Dental College of The University of Texas at Houston created in 1943, nor the School of Public Health and a Preceptorial Training Center authorized by statute to be established at Houston (H.B. No. 821, 50th Leg., Acts 1947, effective May 27, 1947; Art. 2603f, V.C.S.) is designated in the provisions of the College Building Amendment.

The M. D. Anderson Hospital for Cancer Research was established under Chapter 548, 47th Legislature, R. S., Acts 1941 (Art. 2603e, V.C.S.), and was placed under the management and control of the Board of Regents of The University of Texas by this Act.

The Dental College of The University of Texas, referred to in your letter as the School of Dentistry, was created under Chapter 329, 48th Legislature, R.S., Acts 1943 (Art. 2623b-1, V.C.S.). This institution was placed under the management and control of the Board of Regents of The University of Texas by this Act, and by this statute was constituted a branch of The University of Texas for instruction in dental education.

Section 10, Article VII of the Constitution of Texas (1876) provides:

"The Legislature shall as soon as practicable establish, organize and provide for the maintenance, support and direction of a University of the first class, to be located by a vote of the people of this State, and styled 'The University of Texas,' for the promotion of literature, and the arts and sciences, including an Agricultural and Mechanical department." (Emphasis ours.)

Section II of the same Article of the Constitution created what is known as the "Permanent University Fund" in order to enable the Legislature to perform the duties set forth in the foregoing Section 10, and the income derived from the investment of which fund was made subject to appropriation by the Legislature to ac-

complish the purpose declared in the foregoing section. The income derived from the investment of the Permanent University Fund is known and designated as the "Available University Fund."

It will be seen from the foregoing that the Available University Fund was created for a specific purpose; and consequently it is a special fund within the meaning of Section 7 of Article VIII of the Constitution of Texas which prohibits the Legislature from in any manner diverting any special fund from its purpose.

However, it will be noted that the power to locate geographically the University as such, or any of its branches (other than A. & M. College, Section 13 of Article VII) was vested in the people of the State by express provisions of the Constitution, as heretofore shown, to be exercised by a vote cast at an election held at a time and in the manner as was authorized by the Legislature.

Chapter 75, 17th Legislature, R.S., Acts 1881, established The University of Texas and provided for the location of the Main University and a Medical Department thereof, to be determined by a vote of the people at an election to be held on the first Tuesday of September, 1881. (9 Gammel's Laws p. 171) This Act expressly provided that the Medical Branch could be located at a different place than the Main University, and that its location should be voted upon separately from the Main University.

The result of this election was in favor of the establishment of the Medical Department of The University of Texas at Galveston and the Main University to be located at Austin, these places having received the necessary majority vote as prescribed by the statute.

Since a vote of the people was necessary to locate the University, the University or any of its constitutional branches or departments may not be relocated by legislative enactment; but if there does exist a power to so relocate or change the location of such institution or any of its branches as authorized to be created by the Constitution in order to use any portion of the Available University Fund for their support and maintenance, it is vested in the people of the State of Texas to be exercised by a vote of such people cast at

360

an election regularly and properly called for such purpose.

But, as hereinabove determined, the specific grant of power contained in the Constitution to erect and maintain The University of Texas is no limitation upon the power of the Legislature to create other schools of similar purpose, and to maintain them by appropriations from the General Revenue Fund of the State of Texas and to place the management of such institutons as the Legislature may deem expedient under the Board of Regents of The University of Texas or some other agency. Mumme v. Marrs, supra. And the fact that the Legislature may have created such institutions and located them in Houston and constituted them branches of The University of Texas would not change their status as statutory branches as distinguished from constitutional branches. Such a statutory branch of The University of Texas may be fully supported out of the General Revenue. Conversely, it is not eligible to participate in the Available University Fund, such fund being only legally expendable for the use of the constitutional branches.

The fact that the pertinent provisions of Section 14 of Article VII of the Constitution prohibits the Legislature from levying any tax or appropriating any money out of the General Revenue Fund of the State for the erection of buildings of The University of Texas further demonstrates the conclusion expressed that the framers of the Constitution intended that the Available University Fund should be and remain a special fund for the purpose of supporting and maintaining The University of Texas as thereby established, and that said fund should not be dissipated by being expended for any other purpose. A. G. Opinions Nos. O-7091, O-551.

We have reviewed the matter and conclude that the former opinion of Hon. D. A. Simmons herein referred to concerning the School of Mines of The University of Texas is correct; and we therefore follow that opinion. Accordingly, our answer to the submitted question is in the negative.

## SUMMARY

The Legislature may make appropriations from the General Revenue for erection of buildings and other permanent improvements at

Hon. James E. Taylor, Pate 7 (V-818.)

the Dental College of The University of Texas and the M. D. Anderson Hospital for Cancer Research, both located in Houston, Texas. Neither institution is a constitutional branch of The University of Texas for which the Permanent University Fund was created. A. G. Opinion No. 2731 dated April 18, 1928 to Hon. Adrian Pool. Tex. Const. Art. VII, Secs. 10, 11, 13, 14, 17, 18; Tex. Const. Art. VIII, Sec. 7; Tex. Const. Art. III, Sec. 48; Art. 2603e, 2603f, 2623b-1, 2592 and 2654d, Sec. 5, V.C.S.; A. G. Opinion No. V-31.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*
Chester E. Ollison
Assistant

CEO:mw

APPROVED

*Price Daniel*
ATTORNEY GENERAL